Gary Seraydar v. Commissioner.
Seraydar v. Commissioner
Docket No. 6095-66.
United States Tax Court
T.C. Memo 1968-184; 1968 Tax Ct. Memo LEXIS 116; 27 T.C.M. (CCH) 889; T.C.M. (RIA) 68184; August 20, 1968. Filed Lynn W. Fromberg, 19 W. Flagler, Miami, Fla., for the petitioner. James B. Morgan, for the respondent. HOYT
Memorandum Findings of Fact and Opinion HOYT, Judge: Respondent determined deficiencies in income tax for the following years and in the following amounts. Year
Deficiency
1961
$595.72
1962
404.45
1963
125.00
1964
381.94
The above deficiencies were determined by respondent in his statutory notice of deficiency and computed after certain *117 adjustments were agreed to by petitioner. At trial, petitioner conceded the years 1963 and 1964, thus leaving for our adjudication only the years 1961 and 1962. The sole issue presented herein is the same for both years, that is, whether petitioner is entitled to deductions for personal exemptions for his three minor children for the taxable years 1961 and 1962. Findings of Fact Those facts which were stipulated and the exhibits attached are found accordingly, and incorporated herein by this reference. Petitioner's individual income tax returns for the taxable years 1961 and 1962 were timely filed with the district director of internal revenue at Brooklyn, New York. At the time the petition was filed in this case, petitioner was a resident of Coral Gables, Florida. Gary Seraydar, petitioner herein, and his former wife, Rose, are the parents of three minor children, Joan Gail, Diane Lynn, and Charles Joseph, whose ages in 1961 were 11, 10, and 7, respectively. Gary and Rose owned a house in Brooklyn, New York, as tenants by the entirety, where they lived together with their three children from 1956 until March 4, 1962. Gary was employed during 1961 and part of 1962 at a *118 photoengraving company in New York City. His total wages for 1961 were $12,502.61, and for 1962 $5,846.84. Rose was also employed during those years; her take-home pay was approximately $50 per week. She and Gary had a joint savings account in which she sometimes deposited her salary; she withdrew all of the funds from this account, of an unspecified balance at an unspecified time, sometime in 1961 or 1962. In 1961, during the first half of the year, up until about June 15, 1961, Gary usually gave Rose an allowance of $85 per week for the family's food, clothing, and household expenses. By mid-June, however, the domestic feud between Rose and Gary prevented their further cooperation on mundane household matters, so Gary stopped giving Rose a household allowance. Thereafter, he himself bought food and other household items for the family at the local market at an unspecified or estimated cost. By the fall of that year, however, even these few necessary items were not being provided; so Rose petitioned the Kings County Supreme Court for an order for temporary alimony and support. On October 5, 1961, the court granted Rose's petition for child support and ordered petitioner to pay Rose *119 $45 per week for support of the three children. Thereafter petitioner made childsupport payments to Rose which, in 1961, totaled, however, only $175 in lieu of the total of more than $500 ordered by the court for that year. Gary sent two of his children to day camp during the summer of 1961 at a total cost of $185. He also, from time to time, gave the children an allowance of about $5 per week, and made payments for medical services for the children for that year in the amount of $25. Gary, Rose, and the three children occupied the house in Brooklyn during the entire year of 1961. During the year, Gary made the following payments in connection with that house: 890 Mortgage payments
$1,020.00
Utilities
566.28
Property taxes
255.00
Repairs
29.18
Fire insurance
42.23
In 1962 Rose brought an action in the Supreme Court of Kings County, New York, for a separation from petitioner, alleging abandonment and failure of petitioner to support Rose and the children. By an order of that court dated March 4, 1962, petitioner and Rose were legally separated, and Gary terminated his residency at the Brooklyn house. The court found that Gary had failed and refused *120 to provide money for food and clothing for Rose and the children since June 15, 1961, for about four weeks in March of 1961, and for other periods of time in earlier years going back to 1958. Petitioner was ordered to pay $50 per week to support the children. In spite of the court's order, petitioner thereafter did not comply. He made childsupport payments in varying amounts during 1962 totaling only $1,320, approximately one-half of the yearly total ordered. Petitioner was also ordered to pay the mortgage installments on the house in Brooklyn, New York, and to pay the property taxes and utility bills. This, by his own admission on the witness stand, he also thereafter failed to do. During 1962 Gary paid only the first three months mortgage payments totaling $255. After the separation order he made no further mortgage payments. He also paid the premium of $42.23 due for fire insurance for the house. During 1962 petitioner bought clothing which he estimated cost about $100 for the children. He also testified that he paid a department store bill of $250 for the children's clothing. Gary claimed that he gave the children an allowance of $5 each time he saw them in 1962, approximately *121 once a week. However, he did not see them regularly or frequently after June of 1962. Gary was hospitalized in the middle part of 1962, and fell further in arrears on his payments. As a result, he was put in jail on December 13, 1962, where he remained for 182 days, approximately six months. The reason for his being jailed was his failure to make the support and other payments ordered by the court in March of that year. In 1963 he resumed weekly support payments to Rose on June 21, apparently a short time after his release from jail. However, again he was too little and too late. The payments varied in amount from $15 to $50, and for the year totaled only $710. Ultimate Finding of Fact Petitioner did not contribute over onehalf of the total support of his three children in 1961 or 1962. Opinion The question presented is whether petitioner is entitled to deductions for personal exemptions for his three minor children for 1961 and 1962 under section 151(a) and (e)(1).[1] Section 152(a) defines the term dependent as a son or daughter of the taxpayer over half of whose support was received from the taxpayer. The burden of proof is on the petitioner to prove not only his own *122 expenditures in support of each child for each year in issue, but also that those amounts exceeded one-half of the total support provided in each instance. ; . Although petitioner need not conclusively prove the exact or precise total cost of the support for each child in each year, he must provide us with evidence establishing that the amounts he provided exceeded one-half of the total support. . At the outset of the first year in issue, 1961, petitioner was apparently supplying his wife with some funds to keep up the household. By mid-year, however, petitioner stopped giving Rose household funds of any kind. He then attempted to make what he regarded as necessary purchases himself. Apparently, however, all he supplied were some groceries which he brought to the home. This was apparently on an irregular and erratic basis as the domestic strife and difficulties continued. There is no evidence of the cost of these groceries furnished after mid-June nor can we *123 say how long this system continued. Obviously, by early fall the situation was less than satisfactory, and in early October of 1961 Rose filed a petition in court for temporary alimony and child support. On October 5th the court ordered Gary to pay 891 child support of $45 per week for the three children. As our findings reflect, however, Gary did not comply with this order. Instead of contributing the regular weekly amount of $45 as ordered, he paid a total of only $175 thereafter in that year. In an action for legal separation brought by Rose in early 1962 against Gary in the Kings County Supreme Court on grounds of abandonment and failure to support Rose and the infant children of the marriage, the court found that Rose was legally entitled to the relief sought. Petitioner was represented by counsel in that action and after hearings on February 28, 1962 and March 1, 1962, in which testimony was taken and at which the parties appeared by their respective lawyers, the court found that Gary had not supported his wife or children since June 15, 1961, that he had not supported them for four weeks in March of that year, and for various other periods in 1960 and also in 1958. Petitioner *124 was ordered to pay $50 per week for the support of his three children, custody of whom was given to Rose, and to make other payments with respect to the family home, exclusive possession of which, with all its furnishings, was also awarded to Rose. As our findings reflect, Gary did not comply with these orders of the court. In June of 1962, Gary was hospitalized and ceased making all payments as ordered. Whether or not he had been meeting his court-ordered support obligations prior to this time is not clear in the record, it being stipulated merely that during the entire year he made support payments in the total amount of $1,320. In December of that year the court ordered Gary to jail on account of his failure to abide by the orders of court. Respondent has denied the deductions for personal exemptions taken by Gary on his individual income tax returns for his three children in 1961 and 1962, and his determination is presumptively correct. On the record presented, we must conclude that petitioner has not carried his burden of proof to show that the support he furnished for the children constituted more than half of the total amount expended for their support in 1961 or 1962. Sec. *125 152(a); . Petitioner urges on brief that he provided support for the children of $3,402 in 1961, and $2,008 in 1962. He contends that Rose used her own wages for herself and not for the children, that he was their sole supporter, and that even if Rose contributed to the children's support she could not have given more than $700. The record before us, however, does not establish any accurate picture of total child support or petitioner's contribution thereto. While we can vaguely approximate petitioner's contributions as reflected in our findings, we believe that the statute requires more than mere vague approximations. Only a few of Gary's contributions were pinned down to definite figures, the rest were left hovering; we cannot draw reliable or trustworthy totals from cloudy approximations. Petitioner must not only establish his contributions to child support, but he has the burden of showing total support for them. Petitioner here actually made no real attempt to establish any total support figure, and introduced no substantial evidence to show the nonexistence of support from other sources. *126 Obviously, Rose, who was employed in both years, made some substantial contribution in each year; yet we have no evidence pointing toward any actual amount. We have only petitioner's flat assertion that he was the sole support of his children in 1961 and up until March of 1962, which, in the light of the entire record, we find unbelievable. The record establishes that Rose was regularly employed during 1961 and 1962, and earned net take-home pay in excess of $2,600 per year. She also had a savings account which had been jointly held with Gary and from which she withdrew all of the funds; the amount in this account is not disclosed by the record. In addition, Rose had relatives in the area of her home who could have assisted her in supporting her children during the difficult times of domestic strife in the Seraydar household. While petitioner testified that it was "highly improbable" that she obtained funds from these sources, and that he, Gary, had been the children's sole supporter except for a maximum of $750, which Rose might have supplied in 1961, we cannot accept these general, flat and rather vague assertions in toto as sufficient to meet petitioner's burden of proving total *127 support. We must conclude the entire record is devoid of evidence sufficient to establish even a reasonable approximation of the total support furnished the three children in either year before us. Petitioner argues that the record shows that he spent $2,255 in 1961, and $1,830 in 1962, to support his children, exclusive of 892 lodging which he allegedly also provided for them at his expense. However, as our findings reflect, we are not willing to accept petitioner's unsubstantiated general recollections as to precise sums as sufficient to establish them to the penny. Likewise, as our further discussion will indicate, we cannot categorize all of the amounts allegedly paid by petitioner as child-support payments; while some of them might be so recognized, such as the utilities, property taxes, insurance, etc., as lodging expense for the children, if properly prorated or allocated to the children's use, others, such as mortgage payments, cannot be, and there is no adequate showing that what petitioner contributed to pay certain expenses was the total for the various lodging expense items in question. While we agree with petitioner's contention that he need not show precise totals *128 to overcome his burden, we must hold that he has failed to accomplish even the minimum requirement of introducing sufficienyt evidence to justify the conclusion that he contributed over one-half the support for his children during either of the years in question. As we stated in Edward J. Pillis, 47 @T.C. 707, 709 (1967), affirmed per curiam, (C.A. 4, 1967), more than a mere minimal amount of evidence is necessary to overcome the presumptive correctness of respondent's determination that petitioner did not surpass the required one-half level. Except for two cancelled checks supporting three mortgage payments made in March of 1962, and an insurance premium paid in February of 1962, no receipts, supporting documents or other evidence of any claimed support payments were offered to substantiate petitioner's general estimates and recollections, which were not convincing, patently inflated and less than candid. Even those amounts allegedly contributed by petitioner which appear from the evidence to be reasonably precise, cannot be sustained on closer examination. For instance, it has been stipulated that Gary met mortgage obligations on the Brooklyn house of *129 $1,020 in 1961; and other evidence shows similar payments of $255 in 1962. Petitioner urges that a part of those payments, prorated to the number of people living in the house, should be credited to the support contributed by him. Although the argument might appear tenable at first blush, we have held that the fair rental value of lodging furnished, and not the mortgage payments made with respect to the property in which the lodging was furnished is the proper measure of the amount of support furnished by the owner of the property. ; . Petitioner herein has made no showing at all in regard to the fair rental value of the premises. This Court has held that where no evidence is brought to light concerning the fair rental value of the lodging, petitioner fails in his burden of proof. . The March 1962 court order which legally separated Gary and Rose awarded her exclusive possession of the Brooklyn house and its furnishings, as well as ordering petitioner herein to pay interest and amortization due on the mortgage. We noted in , *130 that the right to use and possession of the premises is the factor to be considered in measuring who furnished the lodging and thus who contributed the support therefor. It is not the amount paid in mortgage payments that is determinative of lodging support, but rather who actually furnished the residence at its fair rental value. (D.C.Ore., 1968). Gary has claimed contributions for lodging support of the mortgage payments made during 1961 and the first three months of 1962. The house was owned jointly by Gary and Rose as tenants by the entirety and during 1961 and up until March 4, 1962, they thus shared the right to its use and possession. After March 4, 1962, Rose alone bank account at the Valley National held that right awarded her by court order. Before that date, when both parents of the children occupied the home and permitted the children to live there with them, each would be considered as furnishing one-half of the lodging for the children. After that date, we could allow none of the lodging to petitioner since Rose thereafter had the sole right to possession of the home. The fact that Gary made mortgage payments is not *131 controlling on this point; the right to use and possession is the controlling element. We thus cannot consider for purposes of this case that petitioner has established either the value of lodging furnished his children or that he is entitled to include in his support contribution any amount for lodging, measured by the amount of mortgage payments he allegedly made in the years in issue. 893 As indicated previously on this record, we must conclude and hold that petitioner has failed in his burden of proof. He has not introduced sufficient evidence showing us that he contributed over one-half of the total support of his three minor children during either of the years in issue. Since petitioner has failed to meet this burden of proving error in respondent's determination of deficiencies, Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954.↩